IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

CARMEN ARROYO LANDRON

Debtor

CASE NO. 19-05064

CHAPTER 13

FILED & ENTERED FEB/01/2023

OPINION AND ORDER

This case is before the court upon the *Debtor's Objection to Claim Number 2* (dkt. #51); BPPR's *Answer to Objection to Claim* No. 2 (dkt. #55); BPPR's *Supplement to Answer to Objection to Claim No. 2* (dkt. #63); and the Debtor's *Reply to BPPR's Motion Filed at Docket Entries No. 55 and 63* (dkt. #72). The Debtor contends that BPPR's claim should be disallowed because the unmatured interest included in the proof of claim from the petition date up to and including October 1, 2024, is proscribed by 11 U.S.C. §502(b)(2); and all amounts that were charged to the account after the filing of the petition fail to comply with Fed. R. Bankr. P. 3002.1(c) as the proof of claim did not include official form 410-A.

The contested matter was scheduled for a pretrial conference on June 7, 2022. During the pretrial conference the court raised concerns regarding the legal issue before the court considering the facts of the case. Specifically, the court stated that the Chapter 13 plan dated January 8, 2020 (dkt. #29) was confirmed on February 6, 2020 (dkt. #35); paragraph 3.7 of the plan provides for payment to BPPR in the amount of $23,622.04, including $5,409.00 of interest, for a total of $27,324.26; and BPPR filed amended proof of claim 2-3 in the amount of $23,622.13, which is for only a nine-cent difference. The court granted the parties time to brief on the concerns raised at the pretrial (See minutes at dkt. #85).

-1-

The Debtor filed its *Motion in Compliance with Order* (dkt. #90); BPPR filed its *Reply to Debtor's Answer to Order and Memorandum of Law* (dkt. #97); and the Debtor filed her *Reply to Banco Popular's Motion Filed at Docket Entry No. 97* (dkt. #101).

For the reasons set forth below the court denies the Debtor's Objection to Claim Number 2.

<u>Jurisdiction</u>

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(B). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

<u>Facts and Procedural Background</u>

The Debtor filed a bankruptcy petition under Chapter13 of the Bankruptcy Code on September 3, 2019. The Debtor included in Schedule D (Creditors Who Have Claims Secured by Property), BPPR's secured mortgage debt in the amount of $18, 213.04 disclosed as principal and another secured claim in the amount of $5,409.09 listed as non-principal. The Debtor disclosed that the value of the collateral that supports this claim is a residential property valued in the amount of $100,000.00. On September 6, 2019, the attorney for BPPR, servicer for Ginnie Mae I filed a *Notice of Appearance under Rule 9010(b) of the Federal Rules of Bankruptcy Procedure and Request for Notice to Creditors Under Rule 2002* (Docket No. 7). On September 18, 2019, the Debtor filed proof of claim number 1-1 on behalf of BPPR for a secured mortgage claim in the amount of $18,213.04. The Debtor included a July 10, 2019, payoff statement as a supporting document for the secured claim. The payoff statement indicates that the total amount to pay the mortgage loan in full amounts to $23,622.13. The payoff statement also disclosed that the interest rate was 5.50%; interest per diem (365 days) is 2.7444306; the annual base (360 days) is 83.47.

The next day, on September 19, 2019, BPPR filed proof of claim number 2-1 for a secured mortgage claim in the amount of $30,405.74 with an annual interest rate of 5.50%. BPPR indicated that the amount necessary to cure any default as of the date of the petition was $30,405.74. The

September 17, 2019, payoff statement that is good until October 1, 2024, indicates that the total amount to pay the mortgage loan in full amounts to $30,405.74.

The 341 meeting was held and closed on October 10, 2019. The Chapter 13 Trustee did not recommend the August 31, 2019, chapter 13 plan based upon: (i) the plan fails to comply with required treatment of allowed secured claims pursuant to 11 U.S.C. §1325(a)(5). The Debtor is modifying BPPR's loan in section 3.7 of the plan. Debtor must adequately notify BPPR; (ii) the plan is insufficiently funded to comply with the scheduled distribution or not sufficient information to determine it pursuant to 11 U.S.C. §1325(a)(6). The minimum base needed totals approximately $39,000.00. (Docket Nos. 10 &13). On October 25, 2019, the Debtor filed a *Motion Submitting Documents* in which she informs the Court the tracking status from the United States Postal Service of the plan to creditor Banco Popular. It states that the item was delivered on October 21, 2019, in San Juan, PR with a zip code 00936. (Docket No. 15). On November 4, 2019, the Chapter 13 Trustee filed an unfavorable report for confirmation. The Trustee disclosed that the Debtor is modifying the terms of BPPR's loan in section 3.7 of the plan. The sufficiency of the plan depends on the approval of the treatment of BPPR in section 3.7 of the plan. (Docket No. 16).

On November 6, 2019, an initial confirmation hearing was held in which the plan was not confirmed. The Trustee objected the same because it fails the liquidation value test. The plan provides payment to BPPR, as servicer for Ginnie Mae, in section 3.7 of plan, as to proof of claim number 2. As of the date of initial confirmation hearing BPPR had not objected confirmation. (Docket No. 18). The Debtor was granted twenty-one days to respond to Trustee's objection and the Trustee was granted fourteen days to sur-reply.

On December 4, 2019, the Court denied confirmation of the chapter 13 plan for Debtor's failure to timely comply with this Court's November 7, 2019, Order, by failing to reply to the unfavorable report filed by the Chapter 13 Trustee (Docket No. 20). On December 18, 2019, the Debtor filed a *Motion of Amended Plan and Notice of Opportunity to Object and for a Hearing* in which the amendments to the plan consisted in adjusting the payment schedule and including a lump sum payment in Part 2 and actualizing the provisions in Part 8. (Docket No. 22). On

December 18, 2019, the Debtor filed her *Response to the Chapter 13 Trustee's Unfavorable Recommendation* explaining that as to the Debtor's modification of the terms of the BPPR in section 3.7 of the plan, and the creditor has not opposed the treatment of its claim. The Debtor further explained that since BPPR had not objected to the treatment of its claim, the issue of the plan being insufficiently funded to pay in full the secured claims and this matter being dependent on the approval of BPPR's treatment in section 3.7 of the plan, sufficiency of the plan became moot. The amended chapter 13 plan proposed to pay 100% plus legal interest to the general unsecured claims. (Docket No. 23). On December 18, 2019, the Debtor filed a Motion in Compliance with the December 4, 2019, Order explaining that an amended plan was filed and a response to the Trustee's unfavorable recommendation was also filed. (Docket No. 26).

On January 7, 2020, the Chapter 13 Trustee filed his *Objection to Proposed Plan Confirmation under Section 1325* which, again, were based upon the following: (i) the plan fails to comply with the required treatment of allowed secured claims pursuant to 1325(a)(5); (ii) the Debtor is modifying the terms of BPPR's loan in section 3.7 of the plan. Per evidence submitted by debtor the copy of the plan was delivered to the president of Banco Popular de PR on October 21, 2019 (see docket no. 15). Also, debtor failed to mark in section 3.7 of the plan if the loan will be paid in full through the plan; and (iii) the plan is insufficiently funded to comply with plan scheduled distribution or no sufficient information to determine it. The plan is insufficiently funded to pay in full the secured claims. The sufficiency of the plan depends on the approval of the treatment for Banco Popular de Puerto Rico in section 3.7 of the plan. The plan needs a minimum base of approximately $42,500.00 to pay the secured claims as proposed in the plan and the general unsecured claims as provided in section 5.1 of the plan. (Docket No. 28).

On January 8, 2020, the Debtor filed a *Motion of Amended Plan and Notice of Opportunity to Object and for a Hearing* informing that the amendment to the plan was in section 3.7 to mark the box of 100% payment. In section 3.7, the Debtor included BPPR's principal claim in the amount of $18,213.04 with a 5.50% interest with an estimated total payment of $21,915.26. The Debtor also included BPPR's non-principal amount of $5,409.09 with a 0.00% interest. (Docket

-4-

No. 29). On January 21, 2020, the Trustee filed his *Objection to Proposed Plan Confirmation under Section 1325* which were the same ones as in the Trustee's January 7, 2020, report. (Docket No. 31). On January 28, 2020, the Court ordered the Debtor to reply to the Chapter 13 Trustee's unfavorable report. (Docket No. 32).

On February 3, 2020, the Trustee filed his *No Objection to Proposed Plan Confirmation under Section 1325* of the amended plan dated January 8, 2020. The trustee's report states the following: Debtor is an above median income; thus, the plan term is for 60 months. The plan base is in the amount of $33,600.00[1] and the distribution to general unsecured creditors is approximately 100 plus 3.25%. (Docket No. 34). On February 6, 2020, the Chapter 13 plan dated January 8, 2020, was confirmed. (Docket No. 35).

Thereafter, on November 11, 2021, the Debtor filed an *Objection to Claim number 2-1* requesting the following: (i) the disallowance of the unmatured interest which is proscribed by 11 U.S.C. §502(b)(2). BPPR included post-petition unmatured interest from the petition date through October 1, 2024. Thus, BPPR's proof of claim should be reduced by $5,092.28 for unmatured interest illegally claimed; (ii) the disallowance of all the amounts that were charged to the account after filing of the petition without complying with Fed. R. Bankr. P. 3002.1(c). The proof of claim did not include the required mortgage proof of claim official form 410-A, thus we are unable to determine the specific pre-petition charges and amounts that would justify an increase of $990.00 and the validity as to other charges (iii) and the disallowance of all the amounts that are excessive and/or unreasonable and/or contrary to the law and request compliance with Fed. R. Bankr. P. 3001(c). The Debtor argues that BPPR's proof of claim does not enjoy prima facie evidence of the validity and amount of the claim because it failed to comply with Fed. R. Bankr. P. 3002. (Docket No. 51).

On December 22, 2021, BPPR filed its *Answer to Debtor's Objection to Claim No. 2* in which it included as Exhibit A the required Mortgage Proof of Claim Form 410-A. BPPR requested

---

[1] The Court notes that section 2.1 of the confirmed plan and the Chapter 13 Trustee's favorable recommendation disclose that the total distributions under the plan are in the amount of $39,600. However, the summation of these figures totals $33,600.00. (Docket Nos. 29 & 34).

twenty-one (21) days to submit the specific pre-petition charges and an amendment to claim number 2-1 which was granted by the Court. (Docket No. 55 & 56).

On February 10, 2022, BPPR filed amended secured claim 2-2 in the amount of $15,156.05 with an annual interest rate of 5.50%. Also, on February 10, 2022, BPPR filed a *Supplement to Answer to Debtor's Objection to Claim No. 2* in which it reduced its claim as of the petition date to the amount of $15,156.03 which includes recoverable corporate advances in the amount of $3,334.66; which are composed of foreclosure fees in the amount of $2,056.50; bankruptcy fees in the amount of $650.00, inspections in the amount of $534.56 and title searches in the amount of $93.60. (Docket No. 63). On March 12, 2022, the Debtor filed her *Reply to BPPR's Motion Filed at Docket Entries Nos. 55 & 63* requesting that the Court enter an Order directing BPPR to file a corrected Official Form 410-A. The official form 410-A filed by BPPR at docket number 55 is inconsistent and incorrect because it does not match the information provided in amended proof of claim number 2-2. The Debtor states that once BPPR files a corrected official form 410-A she will withdraw the objection to claim. (Docket No. 72). On March 16, 2022, the Court ordered BPPR to comply within twenty-one (21) days with the Debtor's Reply to BPPR's Motion (Docket No. 72) (Docket No. 75).

On March 24, 2022, BPPR filed amended secured claim 2-3 in the amount of $23,622.13 with a 5.50% annual interest. On April 6, 2022, the Debtor filed a *Motion for Non-Compliance with Order at Docket Entry #75* requesting the Court to order BPPR to supplement its amended claim 2-3 with a corrected and fully compliant mandatory Official Form 410A (Docket No. 78). On May 31, 2022, the parties filed the second *Amended Joint Pre-Trial Report on Contested Matter* (Docket No. 84).

On June 7, 2022, a pre-trial conference was held in which the parties argued their respective positions. The Court raised concerns regarding the contested legal issues before the court in light of the facts of the case. The Chapter 13 plan dated January 8, 2020 (Docket No. 29) was confirmed on February 6, 2020 (Docket No. 35). Paragraph 3.7 provides for payment to BPPR in the total amount of $23,622.04, including $5,409 of interest. The total amount to be paid is $27,324.26.

BPPR's amended proof of claim 2-3 is in the amount of $23,622.13, that is, only a nine-cent difference. The parties restated their respective positions. The Court granted the Debtor 30 days to state her position on the concerns raised by the Court. Namely, what is the adverse effect of BPPR's claim in light of the confirmed plan and what is the legal basis for stating that a creditor may not amend a proof of claim after an objection to claim is filed. BPPR is granted until August 15, 2022, to reply. The Chapter 13 Trustee may state his position at any time. (Docket No. 85). On July 19, 2022, the Debtor filed a *Motion in Compliance* (Docket No. 90). On August 26, 2022, BPPR filed its *Reply to Debtor's Answer to Order and Memorandum of Law* (Docket No. 97). On September 16, 2022, the Debtor filed her *Reply to Banco Popular's Motion Filed at Docket Entry No. 97* (Docket No. 101).

### **Position of the Parties**

### **Debtor**

The Debtor argues that this contested matter had to be initiated because BPPR refused to amend its proof of claim. The Debtor contends that since, "…the confirmed plan provided for the payment of Banco Popular de Puerto Rico's debt with interest, the wrong information provided in its proof of claims magnifies the impact to unsecured creditors." (Docket No. 90, pg. 2). The Debtor contends that BPPR has filed three (3) proof of claims with three different amounts which included unauthorized post-petition amounts, such as $650 in bankruptcy fees and $93.60 for title searches. The Debtor claims that she is unable to determine if additional amounts are improperly claimed, because BPPR failed to attach the mandatory Official Form 410A contrary to Fed. R. Bankr. P. 3001(c)(2). The Debtor asserts that after an objection to claim is filed, similar to an answer to a complaint, a more restrictive standard must be applied, similar to the standard used to allow an amended complaint pursuant to Fed. R. Civ. P. 15. The Debtor contends that the court must evaluate undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, and the futility of the amendment. The Debtor argues that the incorrect proof of claims were amended two (2) years after the original proof of claim (undue delay); after refusing the Debtor's extrajudicial request for an amendment (bad faith); three (3) different and inconsistent

versions of the proof of claim have been filed (repeated failure to cure deficiencies), after significant resources have been invested in the objection to claim (undue prejudice to the opposing party), and the claim is for the incorrect amount and fails to attach the mandatory Official Form 410A (futility of amendment). The Debtor argues that acting contrary to law is bad faith as explained in United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010).

The Debtor contends that the controversies have not been mooted because the Court has not ruled on the remedies requested by the Debtor, to which she is entitled, and because the proof of claims filed continue to be wrong and noncompliant. Furthermore, 11 U.S.C. §502(b) requires a mandatory process that cannot be collaterally mooted. (Docket No. 90, pg. 2, ¶2).

The Debtor argues that the claims allowance process is not an unlimited "trial and error" process. Moreover, proofs of claims are filed under penalty of perjury and the rules are clear regarding the information and documentation that must be provided.

The Court notes that BPPR filed proof of claim 2-1 on September 19, 2019, and the Debtor objected the same on November 11, 2021, that is, 2 years and almost 2 months after it was filed and nineteen (19) months after the plan was confirmed on February 6, 2020 (Docket Nos. 35 & 51).

**BPPR**

BPPR argues that the Court has a confirmed plan with a plan base of $33,000.00 which should not have been confirmed due to insufficient funding to pay in full BPPR's timely filed claim number 2 in the amount of $30,405.74. BPPR asserts that it was not until November 5, 2021, that the Chapter 13 Trustee and the Debtor realized that the plan confirmed on February 6, 2020, was insufficiently funded, given BPPR's timely filed claim number 2-1.[2] BPPR explains that upon Debtor's belated objection to claim #2-1, it then filed on December 22, 2021, Official Form 410A with its Answer to Objection to Claim No. 2. BPPR states that after an internal telephone

---

[2] The Court notes that BPPR references Exhibit A to support its contention that it was not until November 5, 2021, that the Chapter 13 Trustee and Debtor realized that the plan confirmed was insufficiently funded. However, Exhibit A was never submitted to the Court.

conference with the Chapter 13 Trustee, amended claim number 2-2 was filed to account for the status of the loan as of February 2, 2022, and to comply with this Court's order at Docket No. 75. BPPR argues that the amendments to proof of claim number 2 were not filed in bad faith, as a dilatory tactic, or to prejudice the other holders of unsecured claims against the estate. BPPR further argues that it was the Debtor who had to take action to amend the plan to assure that it was sufficiently funded.

### **Legal Issues**

At this juncture and after BPPR's filing of amended proof of claim 2-3, the Court finds that the key legal issue is whether the binding effect of the Debtor's confirmed plan moots BPPR's obligation to comply with Fed. R. Bankr. P. 3001(c)(2), such as filing a compliant post confirmation amended proof of claim that includes the Official Form 410A. The Court notes that if BPPR had not filed any amended proof of claims post-confirmation, then the legal issue would be whether the confirmed plan trumps the Debtor's objection to BPPR's mortgage claim 2-1. The Court notes that the filing of proofs of claims and objections to the same are all part of the claims allowance process, thus, the legal issue before this Court falls under a broader scope, which is whether the binding effect of the plan trumps the claims allowance process.

The Court's legal analysis on this legal issue will determine whether the Debtor is legally entitled to the remedies she has requested. To sustain the argument as to the remedies requested, the Debtor contends that, "[w]e are all unable, including this Honorable Court, to determine the validity of the pre-petition amounts claimed, because Banco Popular failed to attach the mandatory Official Form 410A." (Docket No. 90, pg. 3, ¶7). The Debtor asks, "[w]hy should the Court not grant all remedies requested by the Debtor in the motion filed at Docket entry no. 51, when Banco Popular de Puerto Rico has yet to file a Fed. R. Bankr. P. 3001(c)(2) compliant proof of claim?" (Docket No. 90, pg. 5, ¶11(d)). The remedies sought by the Debtor in her *Objection to Claim Number 2* are the following: (i) disallow all the unmatured interest; (ii) disallow any and all amounts that were charged to the account after the filing of the petition without complying with Fed. R. Bankr. P. 3002.1(c); (iii) disallow all amounts that are unmatured, speculative and/or

wrong; (iv) disallow amounts that are excessive and/or unreasonable and/or contrary to law; and (v) compel compliance with 11 U.S.C. §3002(c)(2)(C). (Docket No. 90, pg. 5, ¶13).

**Applicable Law & Analysis**

**Claims Overview and the Claims Allowance Process**

The Bankruptcy Code and Rules govern the requirements for the filing and the allowance of proofs of claims in chapter 13 cases. Some of the pertinent Bankruptcy Rules for the filing of proof of claims are the following:

Fed. R. Bankr. P. 3001(a) provides: [a] proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a).

Federal R. Bankr. P. 3001(c)(2)(C) & (D) provides in pertinent part:

"(C) If a security interest is claimed in property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim. If an escrow account has been established in connection with the claim, an escrow account statement prepared as of the date the petition was filed and, in a form, consistent with applicable nonbankruptcy law shall be filed with the attachment to the proof of claim.

(D) If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after a notice and hearing, take either or both of the following actions:

> (i)     preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
>
> (ii)    award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." Fed. R. Bankr. P. 3001(c)(2)(C) & (D).

Fed. R. Bankr. P. 3001(f) provides:

"a proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim."

Fed. R. Bankr. P. 3002(c)(7)(B) provides:

"A proof of claim filed by the holder of a claim that is secured by a security interest in the debtor's principal residence is timely filed if:

(A) the proof of claim, together with the attachments required by Rule 3001(c)(2)(C), is filed not later than 70 days after the order for relief is entered; and

(B) any attachments required by Rule 3001(c)(1) and (d) are filed as a supplement to the holder's claim not later than 120 days after the order for relief is entered." Fed. R. Bankr. P. 3002(c)(7)(B).

Fed. R. Bankr. P. 3002(a) states: "[a] secured creditor, unsecured creditor, or equity security holder must file a proof of claim or interest for the claim or interest to be allowed except as provided in Rules 1019(3), 3003, 3004, and 3005. A lien that secures a claim against the debtor is not void due only to the failure of any entity to file a proof of claim." Fed. R. Bankr. P. 3002(a).

Fed. R. Bankr. P. 3004 provides: "[i]f a creditor does not timely file a proof of claim under Rule 3002(c) or 3003 (c), the debtor or trustee may file a proof of claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. The clerk shall forthwith give notice of the filing to the creditor, the debtor and the trustee." Fed. R. Bankr. P. 3004.

Bankruptcy Rule 3004 was amended, effective December 1, 2005, to conform to section 501(c). The amended rule does not allow for the debtor or trustee to file a proof of claim until the creditor's deadline to file a claim has lapsed. "This amended rule no longer refers to the filing of a proof of claim that would supersede the claim filed on behalf of a creditor. The Advisory Committee Note to the 2005 amendment points out that the amended rule does not permit the debtor or trustee to file a proof of claim until the creditor's time has expired. Since the debtor or trustee must wait for that expiration, 'the rule no longer permits the creditor to file a proof of claim that will supersede the claim filed by the debtor or trustee." Keith M. Lundin, Lundin on Chapter 13, §133.4, at ¶ [9], LundinOnChapter13.com (January 17, 2023).

Section 501(a) provides that creditors may file proof of claims. 11 U.S.C. §501(a). Section 501(c) provides that if the creditor does not timely file a claim, the debtor or the trustee may file a proof of such claim. 11 U.S.C. §501(c). Section 502(a) provides in pertinent part that, "[a] claim

or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest, … objects." 11 U.S.C. §502(a). The term "claim" is defined broadly in 11 U.S.C. §101(5)[3]. Consequently, a claim or interest is deemed allowed and valid and enforceable upon filing, unless a party in interest objects. See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶502.02 (16th ed. 2022). The nine paragraphs of subsection (b) of Section 502 establish the sole grounds for disallowance. "To the extent all or part of any claim falls within any of these paragraphs, upon proper objection, the claim is not allowable and, therefore, not permitted to share in the distribution of assets. If an objection to a claim is taken, the court, 'after notice and a hearing,' is to determine the amount of the claim as of the date of the filing of the petition."  Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶502.03[1][c] (16th ed. 2022). Failure by the creditor to comply with Rule 3001(c) because it did not include as an attachment the appropriate Official Form to a claim, does not provide an independent basis for objecting to a proof of claim. Moreover, "an objection to a proof of claim based on the failure to comply with the requirements of [Fed. R. Bankr. P.] 3001 is procedural in nature, and not a substantive objection." In re Roman, 2018 WL 4801933, at *6 (Bankr. D.P.R. 2018), citing Shoemake v. SN Servicing Corp., 586 B.R. 741, 744 (M.D. Tenn. 2018)) ("Lack of the proof of claim documentation required by Rule 3001(c), which is a procedural rule, is not a substantive ground for disallowing a claim."). Rather, Fed. R. Bankr. P. 3002(c)(2)(D) provides the course of action a court may engage in if a holder of a claim fails to comply with Fed. R. Bankr. P. 3001(c)(2)(D)(i), (ii).

Fed. R. Bankr P. 3007 does not establish a time period within which a party in interest must object to the allowance of a claim. Consequently, a number of courts have established deadlines

---

[3] Section 101(5) provides in pertinent part: "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. §101(5)(A).

for filing objections to claims in chapter 13 cases. See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶502.02[3][d] (16th ed. 2022). Notwithstanding, [t]here is no bar date or deadline in the Federal Rules of Bankruptcy Procedure or the Bankruptcy Code for filing objections to claims, and confirmation of a plan does not create a bar to such objections." Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1327.02[2] (16th ed. 2022).

In the instant case, the deadline for all creditors to file a proof of claim was November 12, 2019 (Docket No. 5). The Debtor filed proof of claim number 1-1 on behalf of BPPR on September 18, 2019. BPPR filed proof of claim number 2-1 on September 19, 2019. The Court finds that the Debtor's filing proof of claim 1-1 was premature and contrary to Rule 3004, given that the deadline for creditors to file proofs of claims had not lapsed. In this case, neither the Debtor nor the Chapter 13 Trustee filed an objection to BPPR's proof of claim 2-1 before plan confirmation. The Court further finds that BPPR's proof of claim 2-1 was an allowed claim in conformity with §502(a) as of February 6, 2020, when the chapter 13 plan was confirmed. The Debtor's objection to BPPR's proof of claim 2-1 was filed twenty-one (21) months after the plan was confirmed.

**Amendment to Claims**

Generally, creditors may amend their proofs of claim. "Amendments to proofs of claim timely filed are to be freely allowed, whether for purposes of particularizing the amount due under a previously-asserted right to payment, or simply to cure technical defects in the original proof of claim." In re Hemingway Transp., 954 F.2d 1, 10 (1st Cir.1992) (citations omitted). See also In re Galindez, 514 B.R. at 88 ("amendments to claims are freely allowed.").

The decision to grant or deny an amendment to a timely filed proof of claim "rests with the sound discretion of the bankruptcy court." In re Lorenzo, 2015 WL 4537792, at *7 (B.A.P. 1st Cir. 2015), *aff'd sub nom*, 2016 WL 1275015, 637 F. App'x 623 (1st Cir. 2016), citing In re Ruiz Martinez, 513 B.R. 779, 785 (Bankr. D.P.R. 2014) (citations omitted). "Although amendments to

proofs of claim should in the absence of contrary equitable considerations or prejudice to the opposing party be freely permitted, such amendments are not automatic." In re Ruiz Martinez, 513 B.R. at 784.

"[T]here is no deadline in the [Bankruptcy] Rules or Code after which amendment of [a] claim is prohibited." In re Galindez, 514 B.R. at 88 (citations omitted). "Theoretically, a timely filed proof of claim can be amended at any time while the case is pending, at least until payments are completed under the plan." Id. (citations omitted). In Galindez, *supra,* this Court discussed the requirements that must be satisfied for an amended claim to be allowed, stating as follows:

> ["]Upon the filing of an objection, the allowance of an amended proof of claim is an equitable determination often approached using a two-part test: (1) was a timely similar claim asserted against the bankruptcy estate by a prior formal proof of claim or informal proof of claim; and (2) is it equitable to permit the amendment." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 284.1, at ¶ [3], Sec. Rev. May 5, 2010, www.Ch13online.com. Thus, the first step is to determine whether there was a timely assertion of a similar claim or demand evidencing an intention to hold the bankruptcy estate liable. If the first prong is satisfied, then the court must determine whether it was equitable to allow the amendment. 'The equitable determination to allow or disallow an amendment to a proof of claim timely filed is entrusted to the sound discretion of the bankruptcy court.' In re Hemingway Transp., 954 F.2d at 10. 'The court must scrutinize both the substance of the proposed amendment and the original proof of claim to ensure that the amendment meets three criteria.' Id. Amendments to proof of claims are reviewed under the following three (3) criteria: (i) 'the proposed amendment must not be a veiled attempt to assert a distinctly new right to payment as to which the debtor estate was not fairly alerted by the original proof of claim;' (ii) 'the amendment must not result in unfair prejudice to other holders of unsecured claims against the estate;' and (iii) 'the need to amend must not be the product of bad faith or dilatory tactics on the part of the claimant.' Id; See also; In re Crane Rental Co., 341 B.R. at 120–121. Moreover, '[t]here is no deadline in the Rules or Code after which amendment of claim is prohibited. Theoretically, a timely filed proof of claim can be amended at any time while the case is pending, at least until payments are completed under the plan." [Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 284.1, at ¶ [14], Sec. Rev. May 5, 2010, www.Ch13online.com.]. However, a balance must be attained in the bankruptcy process since "an amended claim is not a backdoor objection to confirmation." Id. at § 284.1, at ¶ [24].

In re Galindez, 514 B.R. at 88.

There are some decisions that have employed Fed. R. Civ. P. 15 as part of their analysis for amending proof of claims after the deadline for timely filing. However, there is a disconnect between Rule 15 which governs amendments to pleadings in a complaint and amending a proof of claim. Lundin explains this matter in the following manner:

> "The use of Federal Rule of Civil Procedure 15 to measure amendments to proofs of claim is an imperfect fit. Rule 15 is not normally applicable to claims objections under Bankruptcy Rules 3007 and 9014. Although Bankruptcy Rule 9014 permits the bankruptcy court to incorporate other rules in a contested matter, Rule 15 deals with amended and supplemental *pleadings*. Pleading is a term of art under Rule 7 of the Federal Rules of Civil Procedure, and a proof of claim is not technically a pleading." Keith M. Lundin, Lundin on Chapter 13, §133.4, at ¶ [6], LundinOnChapter13.com (January 17, 2023).

The court does not find in the record any reason to bar BPPR from filing an amended claim. Moreso, when the latest claim before the court, proof of claim 2-3, agrees with the amounts included in the confirmed plan.

**Binding effect of Plan Confirmation on Secured Claims**

Section 1327(a) provides that: "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." The confirmed plan binds not only the debtors and creditors but also the chapter 13 trustee. See Bankowski v. Wells Fargo Bank, N.A. (In re Reid), 480 B.R. 436, 444-45 (Bankr. D. Mass. 2012); Boyajian v. Vargas (In re Vargas), BAP No. RI 11-076, 2012 Bankr. LEXIS 2910, at *15) (B.A.P. 1st Cir. 2012) ("Although not listed as a party, a chapter 13 trustee is bound by a confirmed plan as well."). "Section 1327(a) is a strong statement: The terms of a confirmed plan are legal obligations of the debtor and all creditors without regard to whether the plan provides for the creditor's claim and without regard to whether the creditor participated in the confirmation process." Keith M. Lundin, Lundin on Chapter 13, §120.2, at ¶ [1], LundinOnChapter13.com (January 17, 2023). "Upon becoming final,

the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan is *res judicata* and its terms are not subject to collateral attack. The *res judicata* effect of confirmation may be eliminated only if confirmation is revoked, or if the case is later dismissed or converted to another chapter. Because plan confirmation 'fixes the rights and obligations of the parties,' it is an appealable order." Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1327.02[1] (16th ed. 2022). "Plan confirmation is a final order, with *res judicata* effect, and is imbued with the strong policy favoring finality." Factors Funding Co. v. Fili (In re Fili), 257 B.R. 370, 373 (B.A.P. 1st Cir. 2001). "The fundamental binding effect of confirmation under §1327(a) has been reported in a vast number of decisions. If notice is adequate, the creditor that fails to object to confirmation and then to appeal an adverse decision is bound by the confirmed plan even if it contains provisions that are inconsistent with the Code that should have been defeated by a timely objection." Keith M. Lundin, Lundin on Chapter 13, §120.2, at ¶ [3], LundinOnChapter13.com (January 17, 2023).

Lundin discusses the difference between the *res judicata* effect of a confirmation order, and the binding effect of a plan based on §1327(a) as follows:

"Perhaps more importantly, the statutory formulation of binding effect in §1327(a) is broader than the *res judicata* effect of an ordinary judgment in the federal courts. A confirmed plan binds even creditors that are not provided for by the plan and without regards to whether the creditor responded to the proposed plan by acceptance or rejection. As is demonstrated below, some courts have misapplied *res judicata* to find limitations on the effect of a confirmed plan that fails to provide for a creditor when § 1327(a) clearly states that such a plan is binding even on a creditor that is not provided for by the plan.

The Ninth Circuit in Espinosa v. United Student Aid Funds, Inc., explained the important distinction between the *res judicata* effect of a confirmation order and the statutory effect of confirmation under §1327(a). Res judicata applies to 'giving the judgment in the bankruptcy case preclusive effect in another case.' When the context is enforcement of the confirmation and discharge orders in the bankruptcy court that issued them, *res judicata* is

-16-

not in play; rather, the binding effect of confirmation is often realized, as it was in *Espinosa*, through the discharge injunction." Id. at ¶[5-6].

The Bankruptcy Appellate Panel for our First Circuit has discussed the binding effect of a confirmed plan pursuant to Section 1327(a) and stated as follows:

"Under this provision, once a bankruptcy plan is confirmed, the debtor and each creditor are bound by its terms. As the First Circuit has explained, confirmation of a Chapter 13 plan customarily is *res judicata* as to all issues that were or could have been decided during the confirmation process. There must be finality to a confirmation order so that all parties may rely upon it without concern that actions that they may later take could be upset because of a later change or revocation of the order. The United States Supreme Court has emphasized that plan confirmation orders are final and binding regardless of pre-confirmation rights held by creditors.

The binding effect of confirmation has led courts to conclude that once a plan is confirmed, a creditor's rights and interests are defined within the boundaries of the plan, and proceedings that are inconsistent with the confirmed plan are improper, even if they fall within an exception to the automatic stay."

New Hampshire v. McGrahan (In re McGrahan), 459 B.R. 869, 874 (B.A.P 1st Cir. 2011) (citations omitted). See also In re Galindez, 514 B.R. 79, 97 (Bankr. D.P.R. 2014); Pawtucket Credit Union v. Boyajian (In re Diruzzo), (B.A.P. 1st Cir. 2015).

"The binding effect of the confirmation order establishes the rights of the debtor and creditors as those that are provided in the plan. It is therefore incumbent upon creditors with notice of the chapter 13 case to review the plan and object to the plan if they believe it to be improper; they may ignore the confirmation hearing only at their peril. Of course, if the plan is ambiguous, the court may still have to resolve disputes as to the rights of the parties, and in such cases the plan may be construed against the debtor, the party who drafted it." Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1327.02[1][a](16th ed. 2022).

Thus, "[i]t is quite clear that the binding effect of a chapter 13 plan extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order,

including whether the plan complies with sections 1322 and 1325 of the Bankruptcy Code." Id. at ¶ 1327.01[1][c].

### Claims Allowance vs. Plan Confirmation

This Court in In re Galindez, 514 B.R. 79 (Bankr. D.P.R. 2014) discussed extensively the claims allowance process; the allowance of amended claims; the binding effect of a confirmation order; and the interplay between the claims allowance process and plan confirmation in light of the United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) decision. This Court thoroughly addressed the overlap that exists between the claims allowance process and the binding effect of plan confirmation as to secured claims and adopted the second approach that is labeled as "the chapter 13 plan process over the claims process" or "emphasis on the *res judicata* effect of a confirmed plan" which proposes that the chapter 13 plan confirmation under §1327 is sufficient to modify a secured creditor's lien through a confirmed plan provided that the due process requirements of reasonable and actual notice have been satisfied. The Court's rationale for adopting the binding effect of a confirmed plan was as follows:

> "Contrary to the first approach ["claims process over the plan confirmation process"], if the secured creditor has been duly noticed of the proposed chapter 13 plan, notwithstanding that it has filed a discrepant proof of claim, then the secured creditor's failure to object to the plan can result in a modification of its claim and lien. See In re Gordon, 2011 Bankr. LEXIS 3848, at *22; In re Pence, 905 F.2d 1107 (7th Cir.1990); In re Ramey, 301 B.R. 534, 545 (Bankr. E.D. Ark. 2003) ("The principles of *res judicata* should be applied except in cases where the notice to the creditor of the plan treatment of the lien is so insufficient that it violates due process of law"); In re Searcy, 333 B.R. 617, 623 (Bankr. D.Mass. 2005) ("... provisions in an adequately noticed Chapter 13 plan which modify the rights of a secured creditor are the functional equivalent of a claims objection under § 502(a). It does not matter, substantively, which route the debtor takes so long as the creditor is informed of the itinerary and has an adequate opportunity to respond to either by defending its proof of claim or by pressing an objection to the plan.").
>
> …
>
> This court adopts the second approach, which emphasizes the binding effect of a confirmed plan provided that the due process requirements of reasonable and actual notice were satisfied. This view is aligned with the Espinosa decision, which supports the principle of finality of plan confirmation orders. See also; In re McGrahan, 459 B.R. at 874-875; In re Murphy, 487 B.R. 86, 94 (Bankr. D.R.I. 2013); In re Muñoz Marquez, 2011 Bankr. LEXIS 3806 (Bankr. D.P.R. 2011). In Reid v. Wells Fargo

-18-

Bank, N.A., 480 B.R. 436, 444-445 (Bankr. D. Mass. 2012), the court concluded that a confirmed plan binds not only the debtors and creditors but also the Trustee pursuant to case law. See also; Boyajian v. Vargas (In re Vargas), 2012 Bankr. LEXIS 2910 (B.A.P. 1st Cir. 2012) ("Although not a listed party, a chapter 13 Trustee is bound by a confirmed plan as well. See, e.g. Hope v. Acorn Fin., Inc., No. 5:110CV-276, 2012 U.S. Dist. LEXIS 2698, 2012 WL 74874 (M.D. Ga. Jan. 10, 2012) (reviewing numerous cases that support the conclusion). Confirmation of a chapter 13 plan affords it *res judicata* effect and therefore prevents relitigation of matters that either were raised or could have been raised prior to confirmation. See e.g.., Burnett v. Burnett (In re Burnett), 646 F. 3d 575, 581 & n.4 (8th Cir. 2011) (noting Supreme Court, while not citing §1327(a) directly, affirmed the binding effect in United Student Aid Funds Inc. v. Espinosa, 559 U.S. 260, 130 S. Ct. 1367, 1381, 176 L. Ed. 2d 158"))"

[This court concludes that the stage of the bankruptcy process in which the inconsistency between the claims allowance process and the binding effect of the plan arises is critical and essential in determining which should prevail. Also, the sufficiency of the notice of the treatment provided to a secured creditor before plan confirmation must afford reasonable time for the creditor to object to the plan. Thus, timing and due notice are key to the binding effect of a confirmed plan and the finality of plan confirmation orders. On the other hand, if a discrepant secured proof of claim is filed before the plan confirmation, then the debtor or Trustee should object the same as part of the claims allowance/disallowance process and before the entry of the confirmation order. The conflict between the claims allowance process and the plan confirmation process oftentimes occurs when the plan gets confirmed prior to the claims bar date and the creditor files after plan confirmation a timely proof of claim. It behooves the debtor or the chapter 13 trustee to object the secured proof of claim prior to confirmation to avoid the friction between the claims allowance process and the plan confirmation process."

514 B.R. at 94-98.

### **Analysis**

As a brief overview of this bankruptcy case, only four (4) proof of claims have been filed in this case.  Two proofs of claims were filed for the BPPR mortgage claim, one by the Debtor on September 18, 2019, and the other by BPPR on September 19, 2019. The other two (2) unsecured claims were filed by the Bank of Missouri d/b/a Fortiva in the amount of $590.01 and by Jefferson Capital Systems, LLC in the amount of $138.70. There are only two (2) unsecured creditors with claims that total $728.71. Moreover, section 5.1 of the amended confirmed plan discloses that the total estimated payment of the nonpriority unsecured claims is in the amount of $ 857.11. (Docket No. 29, p. 6). Therefore, the primary purpose of this bankruptcy filing was to pay the fully matured

mortgage note/claim. The Court finds that the Debtor's filing on behalf of BPPR a proof of claim was premature and contrary to the provisions of Fed. R. Bankr. P. 3004, given that the deadline to file proof of claims had not lapsed.

In the instant case, there are no questions regarding due process. All parties received copies of the proposed amended chapter 13 plan, the confirmation order, and no objections were filed.

Section 3.7 of the amended plan titled, "Other secured claims modifications," disclosed that BPRR's claim was being modified pursuant to 11 U.S.C. §1322(b)(2) and/or §1322(c)(2) and that the principal amount of the claim that was going to be repaid to BPPR was $18,213.04 and that the amount of the 5.50% interest rate component would be in the amount of $5,409.09 which totals the amount of $23,622.13. Section 3.7 of the plan has a standard boilerplate language that reads as follows, "[s]ecured claims listed below shall be modified pursuant to 11 U.S.C. §1322(b)(2) and/or §1322(c)(2). Upon confirmation, the trustee shall pay the allowed claim as expressly modified by this section, at the annual interest rate and monthly payments described below. Any listed claim will be paid in full through disbursements by the trustee, with interest, if any, at the rate stated, pro-rated unless a specific amount is provided below. Unless otherwise ordered by the court, the amounts listed on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) control over any contrary amounts listed below. In the absence of a contrary timely filed proof of claim, the amounts stated below are controlling. If no monthly payment amount is listed below, distribution will be prorated according to plan section 7.2." (Docket No. 29, pg. 5).

BPPR's proof of claim number 2-1 for a secured mortgage claim in the amount of $30,405.74 was not objected to by the Debtor or the chapter 13 trustee before the amended plan was confirmed on February 6, 2020. The January 8, 2020, amended chapter 13 plan was confirmed with an allowed mortgage claim which was afforded disparate treatment in the amended plan

because the same was modified pursuant to 11 U.S.C. §1322(c)(2)[4], resulting in a $6,783.61 haircut to BPPR's allowed proof of claim number 2-1.

The Court concludes that in this case, the Debtor's mortgage fell within the exception to the rule in §1322(b)(2)[5] against the antimodification of home mortgages pursuant to section 1322(c)(2) because the last payment on the original mortgage payment schedule was due before the final payment under the plan. The last mortgage payment was due two months after the Debtor filed the bankruptcy petition. See also; Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1322.17 (16th ed. 2022) ("Section 1322(c)(2) carves out an exception to the rule in section 1322(b)(2), which prohibits the modification of the rights of holders of claims secured solely by a security interest in real estate that is the debtor's principal residence. It provides that if the last payment on the original payment schedule for such a mortgage is due before the final payment under the plan is due the debtor may pay the claim as modified pursuant to section 1325(a)(5)." Moreover, acceptance of a chapter 13 plan by the holder of a secured claim provided for by the plan satisfies the confirmation standard pursuant to §1325(a)(5). If the secured creditor fails to object to its treatment under the plan, it is deemed as an acceptance of the plan. See Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1325.06[1][c][2][6] (16th ed. 2022).

---

[4] Section 1322(c)(2) provides in pertinent part: "Notwithstanding subsection (b)(2) and applicable nonbankruptcy law---

    (1) A default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and

    (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title." 11 U.S.C. §1322(c)(2).

[5] Section 1322(b)(2) provides in pertinent part: "[s]ubject to subsections (a) and (c) of this section, the plan may—

    (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. §1322(b)(2).

[6] "Acceptance of a chapter 13 plan by the holder of an allowed secured claim provided for by the plan satisfies the confirmation standard of section 1325(a)(5) with respect to such secured claim. This alternative for protecting the holder of an allowed secured claim requires little explanation; if the holder of the claim is satisfied with its treatment

Consequently, after Debtor's objection to BPPR's proof of claim 2-1, which had been modified by the confirmed amended plan pursuant to §1322(c), BPPR filed two subsequent amended claims, the last one being the March 24, 2022, namely, amended proof of claim number 2-3 filed by BPPR in the amount of $23,622.13. The amended proof of claim number 2-3 filed post-confirmation by BPPR and the treatment the Debtor gave BPPR's mortgage claim in section 3.7 of the confirmed plan results in the same distribution for BPPR, meaning that there is no discrepancy between the treatment provided to BPPR in the confirmed plan and the post-confirmation amended claim 2-3 filed by BPPR. The court also notes that post-confirmation, the Chapter 13 Trustee has not filed a motion disclosing that the plan was insufficiently funded based on the discrepancy between the treatment of BPPR's mortgage claim in the confirmed amended plan and BPPR's allowed claim.

The Court, in conformity with the binding effect of the plan approach which it adopted in In re Galindez, holds that the binding effect of the Debtor's confirmed amended plan in which the Debtor provided for the treatment of BPPR's fully matured mortgage claim pursuant to §1322(c)(2), trumps the Debtor's post-confirmation objection to BPPR's proof of claim and the secured creditor's obligation to file Official Form 410A for a secured claim that had already been modified via a confirmed amended plan of which BPPR was duly noticed and did not object.

The Court agrees with the Debtor's statement that, "…the claims allowance process is not an unlimited "trial and error" process" and therefore, it has opted for the binding effect of the plan which enforces the principle of the finality of plan confirmation orders. Moreover, as discussed herein, BPPR's failure to comply with Fed. R. Bankr. P. 3001(c)(2) because it did not include as

under the plan, there is no need or justification for further scrutiny by the court. For example, a plan may provide that the debtor will continue making regular monthly payments to a secured creditor, with the debtor acting as the disbursing agent, rather than the trustee. Few secured creditors would object to such a provision.

The failure of a secured creditor to object to its treatment in the plan may be deemed to be acceptance of the plan. This result is in fact mandated in some districts by local rule. Consistent with this view, it has also been held that the trustee does not have standing to object to a plan on the basis that the plan does not afford secured creditors all of their rights under section 1325(a)(5)(B). In any case, it is clear that if no party raises the plan's failure to comply with that subsection the plan may be confirmed." Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1325.06[1][c][2] (16th ed. 2022).

-22-

an attachment the appropriate Official Form to a claim, does not constitute an independent basis under §502(b) for the disallowance of a claim. Notwithstanding, BPPR's distribution under the confirmed amended plan is in accordance with its amended proof of claim 2-3.

### Conclusion

For the reasons stated herein, the Debtor's Objection to Claim Number 2 is hereby denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of January 2023.

Enrique S. Lamoutte
United States Bankruptcy Judge

-23-